Alex Straus (SBN 321366)
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176

***Attorney for Plaintiffs***
Additional Attorneys listed
on signature page

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **BRYAN SMITH and DANIEL FAIR, on behalf of themselves and all others similarly situated,**<br><br>              **Plaintiffs,**<br><br>  **v.**<br><br>**FORD MOTOR COMPANY,**<br><br>           **Defendant.** | **CASE NO. _____**<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF THE SONG-BEVERLY WARRANTY ACT FOR EXPRESS WARRANTIES (Cal. Civ. Code §§ 1791 *et seq.*)<br><br>2. VIOLATION OF THE SONG-BEVERLY WARRANTY ACT FOR IMPLIED WARRANTIES (Cal. Civ. Code §§ 1791 *et seq.*)<br><br>3. BREACH OF EXPRESS WARRANTY (Cal. Com. Code § 2313)<br><br>4. BREACH OF IMPLIED WARRANTY (Cal. Com. Code § 2314)<br><br>5. VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT (15 U.S.C. § 2301, *et seq.*)<br><br>6. VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, *et seq.*)<br><br>7. UNFAIR COMPETITION (Cal. Bus. & Prof. Code §§ 17200, et seq.) |

8.  FRAUD/FRAUDULENT CONCEALMENT

9.  NEGLIGENCE

10. UNJUST ENRICHMENT

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiffs Bryan Smith and Daniel Fair ("Plaintiffs"), by and through counsel, bring this Class Action Complaint against Defendant Ford Motor Company ("Defendant" or "Ford"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsel's investigations, and upon information and belief as to all other matters, as follows:

### NATURE OF THE CASE

1.    Plaintiffs bring this case individually and on behalf of all other similarly situated persons ("Class Members") who purchased or leased Model Year 2017–2020 Ford F-150 vehicles ("Class Vehicles" or "Vehicles") that were designed, manufactured, distributed, marketed, sold, and leased by Defendant or Defendant's parent, subsidiary, or affiliates thereof.

2.    Defendant designed, manufactured, distributed, marketed, sold, and leased Model Year 2017–2020 Ford F-150 Vehicles equipped with the 10R80, a 10-speed automatic transmission ("Transmission") designed and manufactured by Ford.

3.    Defendant knew or should have known that the Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Vehicles' 10R80, a 10-speed automatic transmission that can shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears.

4.    An automatic transmission is essentially an automatic gear shifter. Instead of manually shifting the gears with a clutch, the automatic transmission does it on its own. The transmission acts as a powertrain to convert the vehicle engine's force into a controlled source of

power. Accordingly, drivers need a properly functioning automatic transmission in order to safely and reliably accelerate and decelerate their Vehicles.

5.     A common design and/or manufacturing defect in Ford's 10R80 transmissions is a potentially life-threatening safety issue and Ford has refused to recall or replace the defective Transmissions.

6.     Ford's warranty states that, "dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in factory-supplied materials or factory workmanship."[1]

7.     Upon information and belief, Ford refuses to replace or repair the Transmissions and merely states that the abrupt and harsh shifting is normal.

8.     Prior to purchasing or leasing the Class Vehicles, Plaintiffs and other Class Members did not know that the Class Vehicles would abruptly and harshly shift due to the Transmission Defect and cause their vehicle to unexpectedly surge, hesitate, and jerk.

9.     Upon information and belief, Plaintiffs allege that Defendant knew or should have known that the Class Vehicles are defective and suffer from the Transmission Defect and are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, Defendant failed to disclose this defect to Plaintiffs and Class Members at the time of purchase or lease and thereafter.

10.     Had Plaintiffs and Class Members known about the Transmission Defect at the time of sale or lease, as well as the associated costs related to the Transmission Defect, Plaintiffs and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

11.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

---

[1] Source: http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

12.     The first priority of an auto manufacturer should be to ensure that its vehicles are safe and operate as intended to prevent or minimize the threat of death or serious bodily harm. In addition, an auto manufacturer must take all reasonable steps to ensure that, once a vehicle is running, it operates safely, and its mechanical systems (such as the transmission) work properly. Moreover, an auto manufacturer that is aware of dangerous design defects that cause its vehicles to jerk, hesitate, surge, or slip gears must promptly disclose and remedy such defects.

13.     This case arises from Defendant's breach of its obligations and duties, including Defendant's omissions and failure to disclose that, as a result of the Transmission Defect, Class Vehicles may shift harshly, slip gears, hesitate, or surge, creating an unreasonable risk of serious bodily harm and death.

14.     To the extent warranted by the developing facts, Plaintiffs will further supplement the list of Class Vehicles to include additional Ford vehicles that have the Transmission Defect.

15.     The Transmission Defect makes the Class Vehicles unreasonably dangerous. Because of the Defect, the Class Vehicles are likely to suffer serious damages and potentially catch fire if accidents occur, and there is an unreasonable and extreme risk of serious bodily harm or death to the Vehicle's occupants and others in the vicinity.

## PARTIES

16.     Plaintiff Bryan Smith is a California citizen who lives in Morgan Hill, located in Santa Clara County, California. Mr. Smith purchased a 2018 Ford F-150 XLT with the 10R80 10-speed transmission. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Ford Motor Company.

17.     Plaintiff Daniel Fair is a California citizen who lives in Lake Elisnore, located in Riverside County, California. Mr. Fair purchased a 2019 Ford F-150 Limited with the 10R80 10-speed transmission. This vehicle was designed, manufactured, sold, distributed, advertised, marketed, and/or warranted by Ford Motor Company.

18.     Defendant Ford Motor Company is a publicly traded corporation organized under the laws of the State of Delaware with The Corporation Trust Company, Corporation Trust

Center, 1209 Orange Street, Wilmington, Delaware 19801 as its registered agent. Ford's principle place of business is at One American Road, Dearborn, Michigan 48126.

19.    Ford, through its various entities, designs, manufactures, markets, distributes, and sells its vehicles in this District and many other locations in the United States and worldwide. Ford and/or its agents designed, manufactured, and installed the Ford transmissions in the Class Vehicles.   Ford also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials pertaining to Class Vehicles.

## JURISDICTION AND VENUE

20.    The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and Plaintiffs and Class Members are citizens of states different from Defendant.

21.    The Court has personal jurisdiction over Ford because, through its business of distributing, selling, and leasing the Class Vehicles in this District, Ford has established sufficient contacts in this District such that personal jurisdiction is appropriate.

22.    Venue is proper in this District under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, Plaintiff Smith's Vehicle was purchased in this District.

## THE NATURE OF THE TRANSMISSION DEFECT

23.    For many years, Ford has designed, manufactured, advertised, sold, and leased its popular Ford F-Series pickup trucks, which has been the best-selling pickup in the United States for the last 42 years.[2]

24.    On its website, Ford touts the F-150's superiority among its competitors:

---

[2] Source: https://www.msn.com/en-us/autos/news/ford-f-series-is-americas-best-selling-truck-for-42nd-straight-year/ar-BBRLwMm (last viewed January 2, 2020).

# CLASS-LEADING CAPABILITY

The Ford F-150 makes tough tasks look easy, whether it's working on the job or heading out on a weekend of recreation. F-150 outperforms every other truck in its class when hauling cargo in the bed or towing a trailer.* No wonder the competition is always in a scramble to follow the leader.

25.    In terms of power, Ford states the F-150's 3.5L Ecoboost engine with the 10R80 10-speed transmission provides "on-demand power with virtually no lag"[3]:

# 3.5L ECOBOOST®

The 3.5L EcoBoost® with 10-speed transmission boasts impressive power ratings of 375 horsepower and best-in-class* 470 lb.-ft. of torque, beating out all gas and diesel competitors. This engine delivers the F-150 best-in-class* tow rating too. Features include the Ford port-fuel and direct-injection (PFDI) system with two injectors per cylinder — one in the air intake port, another inside the cylinder — to increase performance. Plus twin intercooled turbos for on-demand power with virtually no lag.

*When properly configured. Class is Full-Size Pickups under 8,500 lbs. GVWR based on Ford segmentation.

26.    Ford makes additional warranties regarding its 10-speed automatic transmission as shown below[4]:

---

[3]Source: https://www.ford.com/trucks/f150/?hptid=fv-2598 hpva%3Abillboard%3Aslide0%3Ana%3Aford%20f-150&gnav=header-all-vehicles (last viewed January 2, 2020).

[4] Source: https://www.ford.com/trucks/f150/features/power/#engines_tab (last viewed January 2, 2020); 2019 Ford F-150 Brochure.

# 10-SPEED AUTOMATIC TRANSMISSION

F-150 EcoBoost®, V8 and diesel engines deliver their power through an advanced 10-speed automatic transmission. Compared with the 6-speed, the 10-speed delivers improved overall performance, with enhanced acceleration at the low and mid ranges of the power band. Features include optimized wide-span gear spacing coupled with drag-reduction actions plus three overdrive gears. What's more, you can choose from selectable modes: Normal, Tow-Haul, Snow-Wet, EcoSelect, and Sport.





**CLASS-BEST 510 LB.-FT. TORQUE‡**

**CLASS-BEST 450 HORSE POWER‡**

**450 HP OF FLAT-OUT LUXURY.** The unique satin finish on the grille, door handles, tailgate appliqué and dual exhaust tips of the 2019 F-150 LIMITED will certainly catch your eye. As will the massive 22" polished-aluminum wheels. What you'll appreciate most, however, is the immediate responsiveness of the High-Output 3.5L EcoBoost engine every time you press the accelerator. Catch one if you can.

**10-SPEED TRANSMISSION**

Standard with five F-150 engines for 2019, the innovative 10-speed automatic transmission with SelectShift® capability helps deliver higher average power for acceleration – improving responsiveness and performance. With optimized gear spacing, including 3 overdrive gears, the 10-speed gearbox helps maximize shift points and gear ratios to optimize power, low-rpm torque and fuel efficiency. For proof, see the Engines charts on the previous page.

10 speeds, plus progressive range select and tow/haul mode, enhance towing confidence. An electronic control system is engineered to help ensure the right gear at the right time, including skip-shift and direct downshift capability. Select the operating range for automatic shifting (in Drive) thanks to progressive range select. Combined with SelectShift operation in manual mode, the 10-speed delivers an exceptional level of driver control.

CLASS ACTION COMPLAINT

| 3.3L Ti-VCT V6 | 2.7L ECOBOOST | 5.0L Ti-VCT V8 |
|---|---|---|
| Equipped with the standard powerplant, F-150 supplies plenty of working power to tow and haul. That's a clean sweep in any truck buyer's ledger. "Even the base 3.3L V6 had zero trouble hauling a 5,000-pound trailer," says *Motor Trend*.<br><br>A dual-injection system features both direct injection and port fuel injection. Two injectors per cylinder – one mounted in the intake port and another inside the cylinder – improve output and efficiency. A 6-speed automatic transmission with SelectShift capability is paired with the 3.3L Ti-VCT V6 engine. | To understand an engine's specific output, divide its horsepower by its displacement. At a staggering 120 hp/L, you'll know why the 2.7L EcoBoost® is deemed "Pocket Hercules." It produces more torque (400 lb.-ft.) than the 5.3L V8 in the 2019 Chevrolet Silverado – an engine nearly twice its size. For exceptional driveability, the 2.7L[1] is paired with our 10-speed automatic transmission with SelectShift capability. "Drop the hammer, and the transmission instantly selects the ideal ratio for peak acceleration from your current speed, always landing in a sweet spot along the broad, flat torque curve and frequently delivering a sharp jolt of acceleration. Yeehaw!" says *Motor Trend*. Strength and durability come from compacted graphite iron (CGI) that forms the upper engine block and cylinders. | 32 valves. Twin independent variable cam timing. Dual-injection system. 12:1 compression ratio. They all combine to make the trusted 5.0L V8 engine[2] an exceptional choice for all-around F-150 capability. Plus, nothing else sounds quite like it. The V8 is paired with the 10-speed automatic transmission with SelectShift capability.<br><br>An available, class-exclusive CNG/Propane Gaseous Engine Prep Package can ready your V8-equipped 2019 F-150 to be upfit for compressed natural gas (CNG), propane autogas, or as a bi-fuel vehicle with the ability to switch between CNG or propane and gasoline.[2] |
| 290 @ 6,500 rpm | 325 @ 5,000 rpm | 395 @ 5,750 rpm |
| 265 lb.-ft. @ 4,000 rpm | 400 lb.-ft. @ 2,750 rpm | 400 lb.-ft. @ 4,500 rpm |
| 1,990 lbs. | 2,470 lbs. | 3,270 lbs. |
| 7,700 lbs. | 9,000 lbs. | 11,500 lbs. |
| 19 mpg city/25 mpg hwy/22 mpg combined | 20 mpg city/26 mpg hwy/22 mpg combined | 17 mpg city/23 mpg hwy/19 mpg combined |
| 18 mpg city/23 mpg hwy/20 mpg combined | 19 mpg city/24 mpg hwy/21 mpg combined | 16 mpg city/22 mpg hwy/18 mpg combined |
| Naturally aspirated | Twin-turbocharged intercooled | Naturally aspirated |
| 6-speed SelectShift automatic | 10-speed SelectShift automatic | 10-speed SelectShift automatic |
| ● XL, XLT | ● XL, XLT, LARIAT | ● XL, XLT, LARIAT, KING RANCH® PLATINUM |

| | 3.5L ECOBOOST | 3.5L H.O. ECOBOOST | 3.0L POWER STROKE V6 TURBO DIESEL |
|---|---|---|---|
| | The 3.5L EcoBoost® soldiers on for 2019 with a best-in-class 470 lb.-ft. of torque, along with 375 horsepower. Paired with the 10-speed automatic transmission with SelectShift capability, engine torque is readily available across the speed range for instant acceleration and exceptional low-end and peak performance. Exactly what's needed for hauling heavy loads and towing heavy trailers. A roller-finger-follower valvetrain features durable intake and exhaust valves, as well as hydraulic valve-lash adjusters that optimize engine durability.<br><br>Robust 3.5L EcoBoost engines now power over 1,220,000 F-150 trucks. | Among the High-Output performance enhancements to the RAPTOR and LIMITED 3.5L EcoBoost engine: increased boost calibrations; a lighter turbine wheel made of high-temperature superalloy Mar-M-247 – developed by the aerospace industry – for improved responsiveness; cast stainless steel exhaust manifolds; full dual exhaust; oil-cooled pistons; and more aggressive engine control calibrations.<br><br>The close ratio between gears and the Ford patented direct-acting hydraulic control of the 10-speed automatic transmission with SelectShift capability really optimize the power and torque curves of this high-output EcoBoost powerhouse. | As the first-ever diesel engine in Ford F-150, the 3.0L Power Stroke V6 Turbo Diesel[3] features a best-in-class EPA-estimated rating of 30 mpg hwy,* a best-in-class 440 lb.-ft. of diesel torque; and 250 diesel horsepower. Plus, best-in-class diesel payload and towing capacity.[4] It's paired with the 10-speed automatic transmission with SelectShift capability to put all that usable, low-end engine torque to good use.<br><br>With the transmission's 10-speed architecture, and the engine's peak torque arriving at a low 1,750 rpm, this powertrain is an exceptional choice for those who tow and haul frequently – where strong torque delivery throughout the rpm range is exactly what you need. |
| Horsepower | 375 @ 5,000 rpm | 450 @ 5,000 rpm[5] | 250 @ 3,250 rpm |
| Torque | 470 lb.-ft. @ 3,500 rpm | 510 lb.-ft. @ 3,500 rpm[6] | 440 lb.-ft. @ 1,750 rpm |
| Max. payload capacity[7] | 3,230 lbs. | 1,520 lbs. | 1,980 lbs. |
| Max. towing capacity[8] | 13,200 lbs. | 11,100 lbs. | 11,300 lbs. |
| EPA-estimated ratings[9] (4x2) | 18 mpg city/25 mpg hwy/21 mpg combined | 17 mpg city/22 mpg hwy/19 mpg combined | 22 mpg city/30 mpg hwy/25 mpg combined |
| (4x4) | 17 mpg city/23 mpg hwy/19 mpg combined | 17 mpg city/21 mpg hwy/19 mpg combined[9] | 20 mpg city/25 mpg hwy/22 mpg combined |
| Induction system | Twin-turbocharged intercooled | Twin-turbocharged intercooled | Variable-geometry turbocharger, intercooled |
| Transmission | 10-speed SelectShift automatic | 10-speed SelectShift automatic | 10-speed SelectShift automatic |
| ● STANDARD<br>○ AVAILABLE | ○ XL, XLT, LARIAT, KING RANCH, PLATINUM | ● LIMITED, RAPTOR | ○ XL (Fleet only), XLT, LARIAT, KING RANCH, PLATINUM |

27.    In terms of express warranties, Ford offers a "New Vehicle Limited Warranty" for three years or 36,000 miles, whichever occurs first.[5]

28.    Ford also offers extended warranty coverage for Powertrain components for five years or 60,000 miles, whichever occurs first.  This extended warranty coverage includes the transmission and all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, and transmission mounts.

---

[5] Source: 2018 Model Year Ford Warranty Guide; http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

CLASS ACTION COMPLAINT

29.    Despite the popularity of Ford's F-150, the truck has not been without its problems. In February 2019, Ford issued three recalls, one of which covered select 2011 and 2013 Ford F-150 vehicles with six-speed automatic transmissions.  In that recall, approximately 1.48 million F-150 trucks had a defect that can cause the truck unexpectedly to downshift into first gear causing accidents and injury to drivers.[6]

30.    Plaintiffs and Class Members allege a common transmission defect in their 2017–2020 model year Ford F-150's with 10-speed transmissions. As discussed herein, numerous F-150 drivers have experienced a loud "clunking" noise when starting the engine. One driver stated that the transmission "clunk" was so loud that he thought he had been hit by another car. Other drivers complain that their transmissions slip gears, jerk, and/or shift roughly. In one NHTSA complaint, a vehicle lost all power while accelerating through an intersection and the transmission failed to shift up or down. In another complaint, an F-150 would repeatedly stay stuck in the same gear, making the truck inoperable for several hours at a time.

31.    Due to the Transmission Defect, drivers have reported whiplash due to harsh shifting. Finally, many drivers have stated in NHTSA complaints that they do not feel safe driving their F-150's in normal traffic conditions.

32.    In response to customer complaints, Ford issued at least two Technical Service Bulletins ("TSBs") addressing the Transmission Defect. While the TSBs were meant to address harsh or bumpy transmission shifting, Ford advised that issues were normal and did not offer to repair or replace the Transmissions.

33.    Due to Ford's unwillingness to acknowledge the Defect and refusal to repair Class Vehicles, Plaintiffs and Class Members continue to drive defective and unsafe vehicles.

---

[6] Source:  https://www.cnbc.com/2019/02/13/ford-issues-3-recalls-covering-nearly-1point5-million-vehicles.html (last viewed January 2, 2020).

1

## PLAINTIFFS' EXPERIENCE

2

<u>Plaintiff Bryan Smith</u>

3

4

5

6

7

8

34.    Mr. Smith was shopping for a safe and reliable vehicle to serve as his personal vehicle and to commute to and from work.  As a result of his research, in December 2018, he purchased a brand new 2018 Ford F-150 XLT with 10-speed transmission pick-up truck from The Ford Store in Morgan Hill, California (an authorized Ford dealership).  Mr. Smith's vehicle was equipped with the defective 10-speed transmission.  The purchase price of Mr. Smith's Vehicle was approximately $45,000.

9

10

11

12

35.    At the time of Mr. Smith's purchase, Ford knew or should have known that its F-150 10R80, 10-speed automatic transmissions were defective but did not disclose the Defect to Mr. Smith.  Mr. Smith purchased, then operated the vehicle, on the reasonable but incorrect belief that his Vehicle's transmission would operate properly as warranted.

13

14

15

16

17

36.    At the time of purchase, the odometer on Mr. Smith's Vehicle showed 5 miles. By the time he had driven the Vehicle approximately 1,000 miles, in February 2019, Mr. Smith started to notice a loud "clanking" noise from his transmission. While driving the Vehicle, Mr. Smith also began to notice that when shifting gears, the transmission feels like it is "slipping," and when accelerating, the Vehicle will not speed up.

18

19

37.    Neither Ford nor any of its agents, dealers, or representatives informed Mr. Smith of the Transmission Defect prior to his purchase of the Vehicle.

20

21

22

23

24

38.    Had Mr. Smith been advised of the Transmission Defect at or before the point of purchase, he would not have purchased his Vehicle or would have paid significantly less for the Vehicle. Mr. Smith did not receive the benefit of his bargain. As a result, Mr. Smith has paid and continues to pay a premium for a defective vehicle which poses a safety hazard to himself, his family, and others.

25

26

27

39.    If Mr. Smith's F-150 transmission did not contain the Defect, he would likely lease or purchase another Ford F-150 in the future. Alternatively, if the Court were to issue an

28

1 injunction ordering Defendant to comply with advertising and warranty laws and fully address

2 the safety issue, Mr. Smith would likely lease or purchase an F-150 again in the future.

3      40.     Neither Ford nor any of its agents, dealers, or representatives informed Mr. Smith

4 of the Transmission Defect prior to his purchase of the Vehicle.

5      41.     Had Mr. Smith been advised of the Transmission Defect at or before the point of

6 purchase, he would not have purchased his Vehicle or else would have paid significantly less for

7 the Vehicle. Mr. Smith did not receive the benefit of his bargain. As a result, Mr. Smith has paid

8 and continues to pay a premium for a defective vehicle which poses a safety hazard to himself,

9 his family, and others.

10      42.     If Mr. Smith's F-150 transmission did not contain the Defect, he would likely lease

11 or purchase another Ford F-150 in the future. Alternatively, if the Court were to issue an

12 injunction ordering Defendant to comply with advertising and warranty laws and fully address

13 the safety issue, Mr. Smith would likely lease or purchase an F-150 again in the future.

14 Plaintiff Daniel Fair

15      43.     Mr. Fair was shopping for a safe and reliable vehicle to serve as his personal

16 vehicle and to commute to and from work.  As a result of his research, in May 2019, he purchased

17 a brand new 2019 Ford F-150 Limited with 10-speed transmission pick-up truck from Hemborg

18 Ford in Norco, California (an authorized Ford dealership).  Mr. Fair's vehicle was equipped with

19 the defective 10-speed transmission.  The purchase price of Mr. Fair's Vehicle was $78,000.

20      44.     At the time of Mr. Fair's purchase, Ford knew or should have known that its F-

21 150 10R80, 10-speed automatic transmissions were defective but did not disclose the Defect to

22 Mr. Fair.  Mr. Fair purchased, then operated the vehicle, on the reasonable but incorrect belief

23 that his Vehicle's transmission would operate properly as warranted.

24      45.     At the time of purchase, the odometer on Mr. Fair's Vehicle showed 6 miles.

25 Within the first 1,000 miles of driving his Vehicle, Mr. Smith started to notice a loud "clanking"

26 noise from his transmission, with the transmission slipping and jerking when accelerating and

27

28

shifting gears. Mr. Fair noticed that while driving his Vehicle, it holds the gears too long, completely shifts out of gear while accelerating, then roughly slams into gear.

46.    After approximately 5,000 miles of driving and experiencing the same transmission issues, Mr. Fair took his Vehicle to the repair shop at Hemborg Ford, an authorized dealership and repair facility, in Norco, CA. Mr. Fair informed employees at Hemborg Ford about the issues he was experiencing with his Vehicle's transmission and requested that they fix the problem per his Vehicle's 3 year/36,000 mile warranty and 5 year/60,000 Powertrain Warranty. Mr. Fair was advised by employees at the repair shop that the transmission in his Vehicle needed to learn his driving habits and that the issue would correct itself over time once this learning occurred.

47.    After approximately 10,000 miles of driving and continuing to experience the same transmission issues, Mr. Fair again took his Vehicle to the repair shop at Hemborg Ford, informed employees at the repair shop about the continuing issues with his Vehicle's transmission and requested that they fix the problem per his Vehicle's warranties. Mr. Fair was advised by employees at the repair shop that they were waiting for a software update from Ford, which would correct the 10R80 transmission problems; a fix was not provided.

48.    Neither Ford nor any of its agents, dealers, or representatives informed Mr. Fair of the Transmission Defect prior to his purchase of the Vehicle.

49.    Had Mr. Fair been advised of the Transmission Defect at or before the point of purchase, he would not have purchased his Vehicle or would have paid significantly less for the Vehicle. Mr. Fair did not receive the benefit of his bargain. As a result, Mr. Fair has paid and continues to pay a premium for a defective vehicle which poses a safety hazard to himself, his family, and others.

50.    If Mr. Fair's F-150 transmission did not contain the Defect, he would likely lease or purchase another Ford F-150 in the future. Alternatively, if the Court were to issue an injunction ordering Defendant to comply with advertising and warranty laws and fully address the safety issue, Mr. Fair would likely lease or purchase an F-150 again in the future.

1

2

**DEFENDANT KNEW OR SHOULD HAVE KNOWN OF THE TRANSMISSION DEFECT PRIOR TO PLAINTIFFS' PURCHASE**

3

**A.      Ford's Knowledge and Refusal to Remedy the Transmission Defect**

4

51.      Since the 10R80 transmission was introduced and equipped in the Class Vehicles,

5

drivers have repeatedly complained about difficulty shifting and vehicle lunging and/or jerking

6

to Ford.  During the class period there was an unusually large number of complaints of harsh and

7

belabored transmission shifting such that Ford was put on notice of a specific problem.

8

52.      On November 27, 2019, Plaintiffs Bryan Smith and Daniel Fair sent demand letters

9

10

to Ford advising Defendant of the Defect, Plaintiffs' theory of liability, and request for class-wide

relief. Exhibit A. Although Ford responded, its response essentially ignored all class claims.

11

53.      A complaint was also filed against Ford in the Northern District of Illinois on July

12

13

26, 2019 alleging the same Transmission Defect in Class Vehicles. *O'Connor v. Ford Motor Company*, No. 1:19-cv-05045 (N.D. Ill.).

14

54.      Furthermore, as the consumer complaints below indicate, Ford was aware, or

15

16

should have been aware, that the Transmission Defect was present in the Class Vehicles dating

back to at least March 2018, the date of the first TSB.

17

55.      Thus, by 2018, Ford knew or should have known through sufficient product

18

19

testing, consumer complaints, or other methods, that the Class Vehicles contained the

Transmission Defect.

20

56.      Upon information and belief, the Class Vehicles contain one or more defects in

21

22

materials, components, construction or design, including but not limited to, the Transmission

Defect, as described herein.

23

57.      Upon information and belief, faced with the fact that Class Vehicles were not

24

25

properly shifting due to the Transmission Defect, Ford issued multiple TSBs addressing the

shifting problems.

26

27

28

58.    The TSBs stated that 2017 and 2018 F-150 vehicles "may exhibit harsh/bumpy upshift, downshift and/or engagement concerns."[7] The TSBs suggested reprogramming the powertrain control module ("PCM"). The TSB's further stated that the Class Vehicles were "equipped with an adaptive transmission shift strategy which allows the vehicle's computer to learn the transmission's unique parameters and improve shift quality. When the adaptive strategy is reset, the computer will begin a re-learning process. This re-learning process may result in firmer than normal upshifts and downshifts for several days."[8]

59.    Upon information and believe, Ford's "adaptive transmission shift strategy" fails to remedy the shifting problems reported in Class Vehicles.

60.    Despite this knowledge, Ford took no further steps to remedy this issue, leaving Plaintiffs and the other Class Members with knowingly defective Class Vehicles.

**B.    Customers Repeatedly Complained About Harsh and Erratic Shifting and Vehicle Lunging, Hesitation, and Jerking.**

61.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the Transmission Defect. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the Transmission Defect is widespread. Not only have consumers complained about harsh and bumpy shifting, but this often led to potentially life-threatening situations. In addition, these complaints illuminate Ford's awareness of the Transmission Defect and its potential danger (note that spelling and grammar mistakes remain as found in the original):

**2017 Ford F-150**

NHTSA Complaint dated May 20, 2019:  original problem was transmission slamming into gear and slipping when accelerating. the truck was kept at agency for 21/2 weeks. service manager told me that ford instructed him to quit working on it. problem of slipping still exist and recently

---

[7] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).

[8] Source: https://static.nhtsa.gov/odi/tsbs/2018/MC-10149749-9999.pdf (last viewed January 2, 2020).

the vehicle jumped out of gear when i was merging onto the interstate, i do not feel safe driving this vehicle. (ID No. 11208720)

NHTSA Complaint dated March 14, 2019:  vehicle lost all power while accelerating thru an intersection. the orange wrench illuminated on the dash with "check manual". i noticed the transmission not shifting down and up smoothly. it tried to start the truck off in 5th gear from a stop. after being shut down for an hour, the issue went away. dealer scanned it this morning and said no code was stored. (ID No. 11079161)

NHTSA Complaint dated April 12, 2019: transmission will stick and not change gears. like a dead spot and truck would not go faster. this has happened several times. (ID No. 11195806)

NHTSA Complaint dated April 8, 2019:  traveling down my driveway, coming to a stop and the transmission gets stuck in 3rd gear. it won't down shift into 1st gear so it won't move forward. i put the shifter into reverse and i am able to back up. put shifter into drive and still stuck in 3rd gear. back up to my house and park the truck not able to go anywhere. go into the house wait a couple of hours and then try it again and everything is okay. this has happened to me 3 other times. (ID No. 11195452)

NHTSA Complaint dated November 18, 2017:  4500 miles on vehicle, never towed anything, only normal city/highway driving, no long trips ever taken. was turning left at intersection and transmission seemed to slip, truck still made it through, i then noticed that a yellow "wrench" light came on, i assumed this was for my upcoming 5k mile oil change. i didn't think much of the "slip" and assumed it was an anomaly. i then got onto the highway and noticed the truck was behaving strangely, power was inconsistent, i attempted to put it into cruise control and it refused to activate. i got off of highway and turned left at an intersection, starting from a complete stop the truck lurched forward and then slipped out of gear and stalled out in the intersection. if a car was coming i would have easily been struck. i let it sit for a few seconds and then the transmission finally got into, and stayed in, first gear. at first it went into gear and then slipped out of gear. this "wrench" light was apparently a limp home mode, another complaint, besides the stalling, would be the fact that this little yellow wrench light does nothing to warn me that the truck is actually in an impaired state, a "limp" mode. i work in the aerospace industry and this would never be tolerated, a function that hampers the normal performance of your vehicle should be easy to recognize as a warning, a little yellow wrench looks like a service light. (ID No. 11047221)

**2018 Ford F-150**

NHTSA Complaint dated May 13, 2019:  intermittent transmission hesitation under acceleration, while pulling into traffic from a side street. without warning the truck completely cuts out. the engine is still running but there is no forward acceleration from the truck. this lasts about 10 seconds. two incidents so far. also very heavy, abrupt shifting, jerking shifting. also intermittent when shifting the truck into reverse while stationary there is a loud heavy clunk from the transmission. (ID No. 11207153)

NHTSA Complaint dated April 17, 2019:  with 2018 f-150 10 speed transmission is shifting hard an down shifts hard getting whiplash. downstairs too hard been at the dealership today is the second time they constantly act like there's nothing wrong with the vehicle av to reset it once

before still having major problems with that new transmission. so basically in inner-city driving is somebody was to jump in front of the vehicle with downshift quickly giving driver or any passengers whiplash stop the vehicle not a very safe or practical build can cause accidents and give major problems if anybody has bad backs or necks was not disclosed at time of sale of a hard shifting transmissions. (ID No. 11196876)

NHTSA Complaint dated April 11, 2019: my truck has 15,000 miles on it. the acceleration will run away frequently (press the pedal and there is a severe lag and lack of power). there will be random engine noise when decelerating around 45 miles per hour. also, acceleration will be rough when going from 20-30 miles per hour just before the it shifts into a higher gear. i took this to the ford dealer and they said there are no error codes on the trucks computer system. also, the steering will be stiff or unaligned at random times. please assist in getting these issues corrected. (ID No. 11195550)

NHTSA Complaint dated March 26, 2019:  tl* the contact owns a 2018 ford f-150. while driving various speeds, the vehicle hesitated to accelerate while depressing the accelerator pedal. also, a clunking noise was present when the transmission switched gears and the vehicle felt different. the vehicle was not diagnosed or repaired. nye ford (1555 upper lennix ave, onye, ny) and the manufacturer were notified of the failure. the vin was not available. the failure mileage was 14,000. (ID No. 11191541)

NHTSA Complaint dated March 4, 2019:  since purchasing the truck, the 10 speed automatic transmission doesn't seem to shift smoothly in many gears. it seems to lurch when shifting at often times and will skip gears when sifting quite frequently. for a new vehicle it doesn't shift smoothly at all. it's been serviced at an authorized ford dealer where they told me the transmission was reprogrammed due to a technical service bulletin but even since then it still doesn't shift smoothly. it happens pretty much everyday or every time i drive it since it was purchased. (ID No. 11184182)

NHTSA Complaint dated February 20, 2019:  this vehicle generally exhibits harsh upshifts (3rd-to-4th) and downshifts (4th-to-3rd) as indicated on the driver's ip. (ID No. 11181413)

i have experienced multiple occasions when the vehicle will "miss" the shift from 3rd to 4th, normally when cold and under light to moderate throttle conditions. the gear indicator briefly shows 1st gear, however, i was able to apply full throttle (100% accel pedal), but had no power to the wheels (drive is not engaged), engine speed rose to approximately 3000 rpm. this condition lasted for about 2-3 secs before it shifted to 4th, the revs settled to normal/expected range and drive to the wheels was re-engaged. this is an extremely dangerous condition that leaves me without power to safely accelerate, or merge with traffic. (ID No. 11181413)

NHTSA Complaint dated February 20, 2019: tl* the contact owns a 2018 ford f-150. while driving various speeds, the transmission downshifted on its own. the vehicle was taken to joel confer ford (2935 penns valley pike, centre hall, bellfornte, pa) on several occasions for the same failure and the transmission control module was reprogrammed; however, the failures continued. the manufacturer was notified of the failures, but no assistance was offered. the vin was not available. the failure mileage was 10,000. *tt*jb (ID No. 11181310)

NHTSA Complaint dated February 13, 2019:  transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated February 9, 2019: 10-speed transmission hesitates/randomly shifts constantly during driving. when stopping at traffic lights, after being completely stopped, the vehicle lurches and an audible clunk can be heard from the transmission. it has always been sluggish when accelerating, today that has gotten far worse and the transmission light is on. i had a 45 minute drive home and the truck struggled to get up to 40 mph. this erratic transmission behavior makes it dangerous to drive in any kind of traffic or on the highway because you can't predict how the vehicle will behave when pushing the gas pedal. (ID No. 11175904)

NHTSA Complaint dated January 18, 2019: the transmission can not decide which gear to be in creating pauses of power distribution to the rear wheels. the transmission shifts hard and pulls the vehicle back and forth creating loud clunking noises and rattling the passengers. the poor operation of the transmission creates unsafe driving conditions. (ID No. 11170881)

NHTSA Complaint dated February 13, 2019: transmission downshifts hard, delays of power to rear wheels, clunking noise, shuddering. been to dealership,3 times for transmission. dealership said i need to drive the truck until transmission gets worse before they can fix it. dealership said im wasting their time with warranty work. ford will not take action to help. transmission problems make the truck unsafe to drive along with its severe steering problems. please someone please help me before myself or my kids or someone else gets injured due to this unsafe truck and negligent dealership and ford (ID No. 11179963)

NHTSA Complaint dated January 18, 2019: vehicle will sometimes hesitate during acceleration and transmission will slip - engine rpms will rise to about 2000 and then transmission will engage with a heavy clunk in the drive train. this issues has happened when engine is cold and at normal operating temp. the vehicle currently has 9000 miles on the odometer and has happened five(5) times already. took to local dealer and they are unable to doplicate (ID No. 11166063)

NHTSA Complaint dated December 13, 2018:  my truck occasionally does not accelerate from a stop at the correct speed. the rpms go way up but the truck barely moves. i described it to the dealer as being in 1/2 of 1st gear, but even then it does not feel totally connected between engine and transmission. it was much worse during hot weather. (ID No. 11161192)

NHTSA Complaint dated November 8, 2018:  while driving 60mph up a slight incline on the interstate, the truck stopped decelerating. the engine rpms jumped up. fortunately i was in the right hand lane and pulled to the shoulder and out of traffic. i was able to rev the rpms and no acceleration, while the gear indicator continued to read "d." it appeared the transmission slipped out of all gears. i coasted to a stop and apologized to my friend for the language as i was on a handsfree call. i placed the gear selector in park, noticed that there were no warning indicators on the dash, and shut off the truck. i pulled out the manual and tried to think of what to do next.

finding no solutions, a friend suggested before i call a tow truck, to start it up and try to put it in drive. i did, and it went into gear normally. it has not happened again, however it has had a few unusually aggressive gear changes. i do not trust this truck with the coyote v-8 engine and 10-speed transmission combination. (ID No. 11161177)

NHTSA Complaint dated December 7, 2018: tl* the contact owns a 2018 ford f-150. the contact stated that the transmission shifted unevenly in the first three gears. when the vehicle was started initially, the rpms increased and decreased. the contact called koons sterling ford (46869 harry byrd hwy, sterling, va 20164, (703) 430-7700) and was informed that there was no recall for the failure. a diagnostic appointment was scheduled for a recall that was unrelated to the failure. the manufacturer was not contacted. the failure mileage was 13,000. (ID No. 11156801)

NHTSA Complaint dated December 7, 2018:  10 speed automatic transmission. transmission makes noise, shifts hard when cold, bucks and surges at lower speeds, downshifts are harsh. dealer states this is all normal behavior for this transmission. worst automatic i have ever owned. (ID No. 11156896)

NHTSA Complaint dated November 17, 2018:  10 speed transmission has been an ongoing issue, was hopeful it would resolve itself once the 5k mile break-in period was surpassed. transmission is awkward, clumsy and spends too much time hunting between gear shifts. my 2013 f150 with 105k miles on it drives noticeably smoother. ford dealer ok with no real explanation for customers. (ID No. 11152174)

NHTSA Complaint dated October 8, 2018:  transmission has intermittent slipping and very rough up and down shifting. it also has intermittent rough hot start (truck kicks forward as if it wants to take off during start up). the truck also has problems shifting while on "sport" mode in which it will not shift up to the next gear even as it reaches the red line in the tachometer. these problems have progressively increased since i bought the truck back in november 2017. i have brought up these concerns to two separate ford dealers and both stated i had to get used to the shifting in this new 10 speed transmission. both dealers also stated that they've had lots of costumer complaints regarding my concern but have not received any direction from ford. my concern is that the transmission might lock up, seize or have a catastrophic failure in which fluid would spill on the roadway and cause me to loose control of the truck. i have looked into several forums and found lots of people with similar complains regarding this 10 speed transmission. please help...thank you. (ID No. 11139060)

NHTSA Complaint dated September 6, 2018:  same issues I'm reading here. vehicle frequently makes a loud bang when started. shifts gears extremely rough to the point where you're jerked around. no power when trying to accelerate from a stop which is extremely dangerous when cars are behind you or trying to accelerate merging onto the freeway. my truck has been to dealer twice now. the first time it was because my fuel injector went out at 4,500 miles! it doesn't run much better now. when i took it in they just blew me off and said it was "normal behavior for the vehicle. reading all these issues here, ford really needs to take action! extremely dangerous!! (ID No. 11124723)

NHTSA Complaint dated August 23, 2018: 10-speed transmission: the transmission shifts very badly. jerky shifting and often times the truck is sluggish when starting from a stop, often times

to the point of acting like the engine is about to die. the only way to partially correct this issues is to drive aggressively and take off from a start with more throttle than one would normally want to. occasionally you can hear/feel a knock from under the truck - underneath the driver's seat when you start the truck and place the transmission in drive. other times when you start the truck and quickly place the transmission in drive the engine will cut off all while your right foot is still on the brake pedal. on one occasion while i was driving through an intersection on a highway at a slow speed (3 - 5 mph?) behind a car which made a right hand turn, i started accelerating and a very loud bang noise occurred that sounded like two cars hitting one another and a hard shake was felt. i checked my mirrors because i thought someone had rear-ended me. just this terrible 10-speed transmission. all of what i have described is after taking the truck to 2 different ford dealerships. all they have done so far is to re-install software. i plan to take it back to a dealership for the third time hoping that maybe someone might test drive it and actually drop the transmission oil pan and actually look at the transmission. maybe if i am lucky the transmission will self-destruct. (ID No. 11121927)

NHTSA Complaint dated August 4, 2018: truck downshifts very erratically and harsh from 6th to 5th gear while braking, causing the brake pedal to be pushed down at various pressures due to the truck lunging forward because of the erratic and harsh downshift from 6th to 5th gear. truck does not feel safe, the downshift is so erratic and harsh that it feels as if you are being rear ended. i have allowed time for the transmission to "learn" as stated in the manual but it has not changed. (ID No. 11119910)

NHTSA Complaint dated April 20, 2018:  10 speed transmission hazards: when braking the transmission lunges into to lower gears and surges forward erratically requiring varying brake pressure to stop. acceleration is also erratic, sometimes delayed, sometimes immediate. the ford dealership does not have a solution and ford will not responds to calls. the erratic behavior of the transmission makes the vehicle dangerous. (ID No. 11089179)

NHTSA Complaint dated April 9, 2018: tl* the contact owns a 2018 ford f-150. while driving approximately 10 mph with the vehicle in first gear, the vehicle shifted into neutral. a few seconds later, the vehicle shifted into second gear. the contact stated that the failure recurred fifteen times. the vehicle was taken to the dealer (moberly motors ford in moberly, missouri, 660-263-6000) determined that the vehicle performed normally. the vehicle was not repaired. the manufacturer was notified of the failure. the approximate failure mileage was 521. (ID No. 11084065)

**2019 Ford F-150**

NHTSA Complaint dated October 28, 2019: experiencing rough/jerky shifts from transmission. part of the jerky shift is a delay in downshift or up-shift followed by it clunking/slamming into gear. jerky downshifts in lower gears thrust vehicle forward. this is experienced during everyday driving conditions while the vehicle is moving in both city and highway conditions. the problem has been ongoing for months. manufacturer has been notified but will not provide a fix. (ID No. 11271538)

NHTSA Complaint dated July 1, 2019: i purchased a 2019 ford f-150 xlt with the 10-speed transmission and the 3.5l v6 ecoboost engine on 5/13/2019. the transmission has become very

problematic and is rough to shift, skips gears, and has created unpleasant driving experiences for me and my passengers.

a few weeks after owning my truck, i started to notice issues with the transmission. initially the truck would appear to skip gears when shifting up or down, after i turned on the vehicle each day for the first time and started to drive. however, the transmission has started to perform worse over the past several weeks. the transmission will shift noticeably hard or sluggishly when shifting up or down with an occasional loud clang sound. the vehicle shifted so hard on two separate occasions that it has caused the seatbelt restraint for myself and my passenger to engage, at the time the vehicle was in motion going approximately 35 mph.

after the two incidents above and the increased frequency in which this transmission has difficulty performing, i took it back to the dealership on 7/1/2019. the appointment lasted about an hour (if that). the service advisor [] advised that the truck was hooked up to the diagnostic and provided me with a printout and told me the transmission was operating normally, and it will skip gears by design. i asked what can be done to fix it, since the truck is jerking me around while driving. he said there was not a fix and i should log a complaint with ford and if enough people complain, maybe a recall would be issued for this truck model/configuration. the vehicle is not operating as expecting and is starting to become a safety concern.

62.     Upon information and belief, because Ford has failed to remedy the Transmission Defect in the 2017, 2018, and 2019 F-150 model year vehicles, 2020 F-150 model year vehicles contain the same defect.  A review of Ford's literature does not indicate changes to or redesign of the transmission.

63.     Ford failed to disclose the Defect or to conduct sufficient testing or research that would have revealed the Defect. As a result, Ford has caused Ford F-150 drivers to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Transmission Defect in the Class Vehicles.

64.     As evidenced by the customer complaints, Ford was put on sufficient notice regarding harsh and abnormal shifting and loss of vehicle power.

65.     Ford has never disclosed the Transmission Defect to consumers. Instead, Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the harsh and bumpy shifting in Class Vehicles was "normal."

66.     Ford has allowed Plaintiff and Class Members to continue to drive the Class Vehicles, despite knowing that they are prone to harsh or abrupt shifting, hesitation, and surging.

67. Ford has not recalled the Class Vehicles to repair the Transmission Defect and has not offered to reimburse Class Vehicle owners and lessees who incurred costs relating to the transmission problems.

68. Plaintiffs and Class Members are reasonable consumers who reasonably expect their Class Vehicles will not harshly and abruptly shift and will not experience sudden and unexpected power surges and losses.

69. Plaintiffs and Class Members reasonably expected that Ford would not sell or lease Class Vehicles with known defects, such as the Transmission Defect, and that it would disclose any such defects to its customers before they purchased or leased Class Vehicles. Plaintiffs and Class Members did not expect Ford to conceal the Transmission Defect, or to continually deny its existence.

70. Consequently, Plaintiffs and Class Members have not received the benefit for which they bargained when they purchased or leased the Class Vehicles.

71. As a result of the Transmission Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

72. Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time-period of any applicable statutes of limitation.

73. Among other things, neither Plaintiffs nor the other Class Members knew or could have known that the Class Vehicles are equipped with transmissions with the Transmission Defect, which causes those transmissions to harshly shift causing gear slippage, vehicle surging, and hesitation.

74. Further, Plaintiffs and Class Members had no knowledge of the Transmission Defect and it occurred in a part of the vehicle that was not visible to consumers. Ford attempted to squelch public recognition of the Transmission Defect by propagating the falsehood that the

1  harsh shifting that drivers of the Cass Vehicles were experiencing was "normal." Accordingly,
2  any applicable statute of limitation is tolled.

3  **B.    Fraudulent Concealment Tolling**

4      75.    Throughout the time period relevant to this action, Ford concealed from and failed
5  to disclose to Plaintiffs and the other Class Members vital information about the Transmission
6  Defect described herein.

7      76.    Ford kept Plaintiffs and the other Class Members ignorant of vital information
8  essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members
9  could have discovered the Defect, even upon reasonable exercise of diligence.

10     77.    Throughout the Class Period, Ford has been aware that the transmissions it
11 designed, manufactured, and installed in the Class Vehicles contained the Transmission Defect,
12 resulting in harsh shifting, gear slippage, and vehicle surging and hesitation.

13     78.    Despite its knowledge of the Transmission Defect, Ford failed to disclose and
14 concealed, and continues to conceal, this critical information from Plaintiffs and the other Class
15 Members, even though, at any point in time, it could have disclosed the Transmission Defect
16 through individual correspondence, media release, or by other means.

17     79.    Plaintiffs and the other Class Members justifiably relied on Ford to disclose the
18 Transmission Defect in the Class Vehicles that they purchased or leased, because the Defect was
19 hidden and not discoverable through reasonable efforts by Plaintiffs and the other Class Members.

20     80.    Thus, the running of all applicable statutes of limitation have been suspended with
21 respect to any claims that Plaintiffs and the other Class Members have sustained as a result of the
22 Defect, by virtue of the fraudulent concealment doctrine.

23 **C.    Estoppel**

24     81.    Ford was under a continuous duty to disclose to Plaintiffs and the other Class
25 Members the true character, quality, and nature of the defective Transmissions.

26     82.    Ford knowingly concealed the true nature, quality, and character of the defective
27 Transmissions from consumers.

28

83.     Based on the foregoing, Ford is estopped from relying on any statutes of limitation in defense of this action.

## CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

85.     The Class is defined as:

**All persons in California who formerly or currently own or lease one or more of 2017 to 2020 Model Year Ford F-150 trucks with a 10R80 10-speed automatic transmission.**

86.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, the judges and all other court personnel to whom this case is assigned, their immediate families, and those who purchased Class Vehicles for the purpose of resale.

87.     Plaintiffs reserve the right to amend or modify the Class definition after they have had an opportunity to conduct discovery.

88.     <u>Numerosity</u>:  Fed. R. Civ. P. 23(a)(1). The Class is so numerous that the joinder of all members is unfeasible and not practicable. While the precise number of Class Members has not been determined at this time, Plaintiffs are informed and believe that thousands of consumers have purchased or leased the Class Vehicles in California.

89.     <u>Commonality</u>: Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     whether the Class Vehicles and their transmissions are defectively designed or manufactured such that they are not suitable for their intended use;

b.     whether the fact that the Class Vehicles suffer from the Transmission Defect would be considered material to a reasonable consumer;

c.  whether, as a result of Ford's concealment or failure to disclose material facts, Plaintiffs and Class Members acted to their detriment by purchasing Class Vehicles manufactured by Ford;

d.  whether Ford was aware of the Transmission Defect;

e.  whether the Transmission Defect constitutes an unreasonable safety risk;

f.  whether Ford breached express warranties with respect to the Class Vehicles;

g.  whether Ford has a duty to disclose the defective nature of the Class Vehicles and the Transmission Defect to Plaintiffs and Class Members;

h.  whether Plaintiffs and Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction; and

i.  Whether Ford violated the Magnuson-Moss Warranty Act when it sold to consumers Class Vehicles that suffered from the Transmission Defect.

90.  <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

91.  <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Ford's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Ford's misconduct.  Absent a class action, Class Members will continue to incur damages, and Ford's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
FOR BREACH OF EXPRESS WARRANTIES ("SBCWA")
(Cal. Civ. Code §§ 1791.2 & 1793.2)
(Plaintiffs individually, and on behalf of the Class)**

92.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

93.    Plaintiffs bring this cause of action individually and on behalf of the Class.

94.    Plaintiffs and Class members are "buyers" within the meaning of the SBCWA. Cal. Civ. Code § 1791(b).

95.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

96.    Ford is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

97.    Plaintiffs and Class Members bought or leased Ford F-150 pick-up trucks equipped with Ford's defective 10R80 10-speed transmission.

98.    Ford made express warranties to Plaintiffs and Class members within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2 as set forth herein.

99.    Specifically, in the course of selling and leasing the Class Vehicles, Ford expressly warranted in writing that the vehicles were covered by certain warranties in Ford's "New Vehicle Limited Warranty" as described herein.  This express warranty states that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail during normal use during the applicable coverage period due to a manufacturing defect in the factory-supplied materials or factory workmanship."[9]

100.    As set forth herein in detail, the Class Vehicles are inherently defective because they are equipped with Ford's defective 10R80 10-speed transmission which results in harsh shifting, gear slippage, and vehicle surging and hesitation.

---

[9] Source: http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

101.    The Transmission Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers like Plaintiffs and Class members.

102.    Plaintiff delivered the Class Vehicle to Ford or its authorized repair facility to repair the Defect and notified Ford in writing of the need for repair, as set forth herein, but Ford failed and continues to fail to make repairs to Plaintiffs' Class Vehicles under its Warranty.

103.    As evidenced by the TSB from September 7, 2018, the Transmission Defect is covered by Ford's New Vehicle Limited Warranty.

104.    The New Vehicle Limited Warranty as described was made part of the basis of the bargain when Plaintiffs and Class Members bought or leased the Class Vehicles.

105.    Ford breached its express warranties to repair defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unwilling to reasonably repair, the Transmission Defect.

106.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

107.    Ford made additional warranties to Plaintiffs and Class Members such as the 10R80 transmissions delivered "enhanced acceleration," "immediate responsiveness," and "on demand power."

108.    Accordingly, recovery by Plaintiffs and the Class is not limited to the express warranties of repair to parts defective in materials or workmanship, and Plaintiffs seek all remedies as allowed by law.

109.    As a direct and proximate result of Ford's breach of its express warranties, Plaintiffs and Class members received goods containing a dangerous condition that substantially impairs the value of the goods sold to Plaintiffs and Class members, and have been damaged in an amount to be determined at trial.

110.    Pursuant to Cal. Civ. Code. §§ 1793.2 & 1794, Plaintiffs and other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Ford vehicles, or the overpayment or diminution in value of their Class Vehicles.

111.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
FOR BREACH OF IMPLIED WARRANTIES ("SBCWA")
(Cal. Civ. Code §§ 1791.1 & 1792)
(Plaintiffs individually, and on behalf of the Class)**

112.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

113.    Plaintiffs bring this cause of action individually and on behalf of the Class.

114.    Plaintiffs and Class members are "buyers" within the meaning of the SBCWA. *See* Cal. Civ. Code § 1791(b).

115.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

116.    Ford is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

117.    Ford impliedly warranted to Plaintiffs and the other Class members that its Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

118.    In reality, the Class Vehicles do not possess those qualities that a buyer would reasonably expect.

119.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label.

120.    The Class Vehicles are not suitable for the market, and would not pass without objection in the automotive industry and market because they are equipped with Ford's defective 10R80 10-speed transmission which results in harsh shifting, gear slippage, and vehicle surging and hesitation.

121.    Ford's defective 10R80 10-speed transmission makes the Class Vehicles unsuitable for safe driving. The Class Vehicles are not in merchantable condition, and are therefore, not fit for their ordinary purposes.

122.    Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the Transmission Defect.

123.    Ford breached the implied warranty of merchantability by manufacturing and selling Class Vehicles equipped with Ford's defective 10R80 10-speed transmission. Furthermore, the Transmission Defect has caused Plaintiffs and other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

124.    The Transmissions installed in the Class Vehicles were defective at the time they left the possession of Ford, as set forth above.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for their ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the 10R80 Transmission and present an undisclosed safety risk to drivers, occupants, and others. Thus, Ford breached its implied duty of merchantability.

125.    Defendant cannot disclaim its implied warranties as it knowingly sold or leased a defective product.

126.    Ford knew, or should have known, that the Class Vehicles posed a safety risk and were defective and knew, or should have known, of these breaches of implied warranties prior to sale or lease of the Class Vehicles to Plaintiffs and Class Members.

127.    Plaintiffs and the other Class Members have had sufficient direct dealings with Ford and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract between Ford and Plaintiffs and each of the other Class Members. Ford's authorized

dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers and lessees of the Class Vehicles, *i.e.*, Plaintiffs and Class Members.

128.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Ford and its dealers, and specifically, of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

129.    In addition, by extending express written warranties to end-user purchasers and lessees, Ford brought itself into privity with Plaintiffs and all Class Members.

130.    Ford has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

131.    Plaintiffs and Class Members used the Class Vehicles, its Transmissions, in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Ford or by operation of law in light of Ford's unconscionable conduct.

132.    Ford had actual knowledge of and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

133.    In addition, Ford received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the Transmissions installed in the Class Vehicles.

134.    As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially renders them unsafe for their intended purpose and impairs their value to

1  Plaintiffs and the other Class Members; Plaintiffs and Class Members have suffered damages and
2  Ford was unjustly enriched by keeping the profits for its unsafe products while never having to
3  incur the cost of repair, replacement or a recall.

4      135.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and Class members
5  are entitled to damages and other legal and equitable relief, including, at their election, the
6  purchase price of or a buyback of their Class Vehicles, or the overpayment or diminution in value
7  of their Class Vehicles.

8      136.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and Class members are also entitled
9  to costs and reasonable attorneys' fees.

10                              **THIRD CAUSE OF ACTION**

11                         **BREACH OF EXPRESS WARRANTY**
                              **(Cal. Com. Code § 2313)**
12                **(Plaintiffs individually, and on behalf of the Class)**

13     137.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if
14  fully set forth herein.

15     138.    Plaintiffs bring this cause of action individually and on behalf of the Class.

16     139.    Ford is and was at all relevant times a merchant with respect to motor vehicles.
17  Cal. Com. Code § 2104.

18     140.    Pursuant to Cal. Com. Code § 2313:

19         (1) Express warranties by the seller are created as follows:

20         (a) Any affirmation of fact or promise made by the seller to the buyer which
           relates  to the goods and becomes part of the basis of the bargain creates an
21         express warranty that the goods shall conform to the affirmation or promise.
22  *Id*.

23     141.    In the course of selling and leasing the Class Vehicles, in its Warranty and in
24  advertisements, brochures and other statements, Ford expressly warranted in writing that the Class
25  Vehicles were covered by certain warranties in Ford's "New Vehicle Limited Warranty" as
26  described herein.  This express warranty states that "authorized Ford Motor Company dealers
27  will, without charge, repair, replace, or adjust all parts on your vehicle that malfunction or fail

28
                                          30

during normal use during the applicable coverage period due to a manufacturing defect in the factory-supplied materials or factory workmanship."[10] Ford made additional warranties to Plaintiffs and Class Members such as the 10R80 transmissions delivered "enhanced acceleration," "immediate responsiveness," and "on demand power."

142.    Ford's Warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class Members purchased or leased their Class Vehicles.

143.    Ford breached its express warranties to repair defects in materials and workmanship of any part supplied by Ford. Ford has not repaired, and has been unwilling to reasonably repair, the Transmission Defect.

144.    At the time of selling or leasing the Class Vehicles, Ford did not provide Class Vehicles that conformed to its express warranties.

145.    Furthermore, the express warranties to repair defective parts fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class Members whole and because Ford has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

146.    Accordingly, recovery by Plaintiffs and Class Members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class Members, seek all remedies as allowed by law.

147.    Also, as alleged in more detail herein, at the time that Ford warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Ford wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

---

[10] Source: http://www.fordservicecontent.com/Ford_Content/Catalog/owner_information/2018-Ford-Car-Lt-Truck-version-5_frdwa_EN-US_01_2018_3.pdf (last viewed January 2, 2020).

148.    Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy to "repair, replace or adjust" as many incidental and consequential damages have already been suffered due to Ford's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiffs' and the other Class Members' remedies would be insufficient to make Plaintiffs and the other Class Members whole.

149.    Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiffs and members of the Class given that Ford knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed between Ford and Class Members, and Ford knew or should have known that the Class Vehicles were defective at the time of sale due to its defective 10R80 Transmission, as alleged herein.

150.    Ford had actual knowledge of, and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy. In addition, Ford received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the Transmissions installed in the Class Vehicles.

151.    As a direct and proximate result of Ford's breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial

## FOURTH CAUSE OF ACTION

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Com. Code § 2314)**
**(Plaintiffs individually, and on behalf of the Class)**

152.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

153.    Plaintiffs bring this cause of action individually and on behalf of the Class.

154.    Ford is and was at all relevant times a merchant with respect to motor vehicles. Cal. Com. Code § 2104.

155.    A warranty that the Class Vehicles were in merchantable condition is implied by law, pursuant to Cal. Com. Code § 2314.

156.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which trucks are used. Specifically, the Class Vehicles suffer from an inherent Transmission Defect, as alleged herein.

157.    Ford had actual knowledge of, and received timely notice of the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy. In addition, Ford received, on information and belief, numerous consumer complaints and other notices from customers advising of the Defect associated with the Transmissions installed in the Class Vehicles.

158.    Plaintiffs and the other Class Members have had sufficient direct dealings with either Ford or its agents (dealerships) to establish privity of contract between Ford and Plaintiffs and the other Class Members, as alleged herein.

159.    By extending express written warranties to end-user purchasers and lessees, Ford brought itself into privity with Plaintiffs and Class Members.

160.    Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class Members are intended third-party beneficiaries of contracts between Ford and its dealers; specifically, they are the intended beneficiaries of Ford's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.

161.    Finally, privity is also not required because Plaintiffs' and the other Class Members' Class Vehicles are dangerous instrumentalities due to the aforementioned Transmission Defect.

162.    Furthermore, the application of (or refusal to permit coverage under) the Warranty is unconscionable and inadequate to protect Plaintiffs and members of the Class given that Ford knew of the Defect but failed and fails to disclose it. A gross disparity in bargaining power existed

between Ford and Class Members, and Ford knew or should have known that the Class Vehicles were defective at the time of sale due to its defective 10R80 transmission, as alleged herein.

163.    As a direct and proximate result of Ford's breach of the warranty of merchantability, Plaintiff and class members bought the Class Vehicles without knowledge of the Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

164.    Plaintiffs and the other Class Members have been damaged in an amount to be proven at trial.

## **FIFTH CAUSE OF ACTION**

### **VIOLATION OF MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq*.)**
**(Plaintiff individually, and on behalf of the Class)**

165.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

166.    Plaintiffs bring this cause of action individually and on behalf of the Class.

167.    Plaintiffs and Class Members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

168.    Ford is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

169.    The Class Vehicles are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

170.    Ford's express warranties are each a "written warranty" within the meaning of the MMWA. 15 U.S.C. § 2301(6).

171.    Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

172.    Ford's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Vehicles' implied warranties are accounted for under Section

2301(7) of the MMWA, warranties which Ford could not disclaim under the MMWA, when it failed to provide merchantable goods.

173.    This Court has original jurisdiction over this matter under CAFA and therefore can assert supplemental jurisdiction over this claim.

174.    Plaintiffs and Class Members have sufficient interactions with Ford to create privity of contract; however, privity of contract is not required because Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Ford and its authorized dealers, and specifically, of Ford's implied warranties. Ford's dealers are intermediaries between Ford and consumers, that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore have no rights against Ford with respect to Plaintiffs' and Class Members' purchases or leases of Class Vehicles. Ford's warranties were designed for the benefit of consumers who purchased or leased Class Vehicles.

175.    As discussed herein, Ford extended a three-year/36,000 mile New Vehicle Limited Warranty with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee. Ford also extended a five-year/60,000 mile Powertrain Warranty with the purchase or lease of the Class Vehicles.

176.    Ford breached each of these express warranties by:

    a.    Selling and leasing Class Vehicles with transmissions that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

    b.    Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, any defective component parts.

177.    Ford's breach of express warranty has deprived Plaintiffs and Class Members of the benefit of their bargain.

178.    The amount in controversy for each individual Plaintiff's claim exceeds the sum or value of $25 and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs; there are over 100 Class Members.

179.    Ford has been afforded a reasonable opportunity to cure its breach of warranties by Plaintiffs' demand letter and when Ford consumers brought their vehicles in for diagnosis and repair of the Transmission Defect.

180.    Resorting to any informal dispute resolution procedure is unnecessary and/or futile. At the time of sale to Plaintiffs, Ford knew, should have known, or was reckless in not knowing of its misrepresentations or omissions concerning the Transmission Defect, but nevertheless failed to rectify the situation and/or disclose it to Plaintiffs. Moreover, the remedies available through any informal dispute resolution procedure would be wholly inadequate under the circumstances. Accordingly, any requirement under the MMWA or otherwise that Plaintiffs resort to any informal dispute resolution procedure is excused and, thereby, deemed satisfied.

181.    As a direct and proximate cause of Ford's breach of express and implied warranties, Plaintiffs and Class Members sustained damages and other losses in an amount to be determined at trial. Ford's conduct damaged Plaintiffs and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution of value, costs, including statutory attorneys' fees and/or other relief as appropriate.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA")
(*Cal. Civ. Code § 1750, et seq.*)
(Plaintiffs individually, and on behalf of the Class)

182.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

183.    Plaintiffs bring this cause of action individually and on behalf of the Class.

184.    Ford's actions, representations and conduct violated the CLRA because they extend to transactions that intended to result and which have resulted, in the sale or lease of goods to Plaintiffs and Class Members. Cal. Civ. Code § 1770.

185.    Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

186.    Plaintiffs and Class Members are "consumers" as defined by Cal. Civ. Code § 1761(d).

187.    The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

188.    Ford made numerous representations concerning the Class Vehicles' specifications that were misleading, including marketing and advertising the workmanship of Class Vehicles and the nature and extent of Ford's Warranty.

189.    Ford also omitted material facts about the Class Vehicles, namely the Transmission Defect.

190.    In purchasing or leasing Class Vehicles, Plaintiffs and Class Members were deceived by Ford's failure to disclose that the Class Vehicles contain the Transmission Defect, resulting in expensive damage for which Ford will not provide coverage under its express or implied warranties.

191.    Ford violated the CLRA in at least the following respects:

   a.    in violation of § 1770(a)(5), Ford represented that the Class Vehicles have approval, characteristics, and uses or benefits which they do not have;

   b.    in violation of § 1770(a)(7), Ford represented that the Class Vehicles are of a particular standard, quality or grade, when they are of another;

   c.    in violation of Section 1770(a)(9), Ford has advertised the Class Vehicles as safe with the intent not to sell them as advertised; and

   d.    in violation of § 1770(a)(16), Ford represented that the goods have been supplied in accordance with previous representations, when they were not.

192.    Ford violated the CLRA by representing the Class Vehicles were safe and free of defects when they were not and Defendant knew, or should have known, that the representations and advertisements were false and misleading.

193.    Ford had a duty to disclose the Transmission Defect because Ford had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Ford made partial representations about the quality of Class Vehicles but failed to fully disclose that the Transmission Defect plagues Class Vehicles.

194.    Specifically, Ford was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles because:

a. Ford was in a superior position to know the true state of facts about the Transmission Defect –a defect that can pose a safety risk—and associated repair costs in the Class Vehicles;

b. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Transmission Defect;

c. Ford knew that Plaintiffs and the Class Members could not reasonably have been expected to learn or discover the Transmission Defect until manifestation of the Defect; and

d. Ford made incomplete representations about the safety and reliability of Class Vehicles generally, while withholding material facts from Plaintiffs and Class Members that contradicted these representations.

195. The facts concealed or not disclosed by Ford to Plaintiffs and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles, or they would have paid less. A vehicle made by a reputable manufacturer of safe vehicles is worth more than a comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

196. Ford has known of the defective transmissions since at least March 2018, when it issued the first TSB regarding the Transmission Defect, thereby acknowledging numerous consumer complaints made to the NHTSA. However, Ford continued to allow unsuspecting new and used truck purchasers to buy or lease the Class Vehicles and allowed them to continue driving dangerous vehicles.

197. Defendant intended that Plaintiffs and Class Members would, in the course of their decision to expend monies in purchasing, leasing and/or repairing Class Vehicles, reasonably rely upon the misrepresentations, misleading characterizations, warranties and material omissions concerning the quality of the Class Vehicles and its transmissions with respect to materials, workmanship, design and/or manufacture.

198.    Plaintiffs and Class Members reasonably relied on Ford's misrepresentations and omissions in purchasing or leasing Class Vehicles.

199.    Plaintiffs and Class Members have been damaged as a proximate result of Defendant's violations of the CLRA and have suffered actual damages as a direct and proximate result of purchasing or leasing defective Class Vehicles.

200.    Prior to filing this Complaint, Plaintiffs served notice letters on Ford, notifying Ford of Plaintiffs' damages and the Transmission Defect in their Class Vehicles, in compliance with Cal. Civ. Code §1782(a). Plaintiffs have made pre-suit attempts to remedy the Transmission Defect in their Class Vehicles, to no avail.

201.    Under Cal. Civ. Code § 1780(a), Plaintiffs and Class Members seek actual damages, an order enjoining Ford from further engaging in the unfair and deceptive acts and practices alleged herein, restitution, attorney's fees and costs.

202.    Under Cal. Civ. Code § 1780(b), Plaintiffs and Class Members seek an additional award against Ford of up to $5,000 for each Class Member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Ford knew or should have known that its conduct was directed to one or more Class Members who are senior citizens or disabled persons. Ford's conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Class Members who are senior citizens or disabled persons are substantially more vulnerable to Ford's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Ford's conduct.

203.    Pursuant to Cal. Civ. Code § 3345, Plaintiffs and Class Members seek an award of trebled damages on behalf of all senior citizens and disabled persons comprising the Class as a result of Ford's conduct alleged herein.

204.    Pursuant to CLRA Section 1780(a)(4), Plaintiffs and Class Members also seek punitive damages against Ford because it carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs and Class Members to potential cruel and unjust hardship as a result. *See* Cal. Civ. Code § 1780(a)(4). Ford intentionally and willfully deceived Plaintiffs on life-or-death matters, and concealed material facts that only Ford knew. Ford's unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under Cal. Civ. Code § 3294.

205.    Plaintiffs further seek any other just and proper relief available under the CLRA.

## SEVENTH CAUSE OF ACTION

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. Prof. Code §§ 17200, *et seq*.)**
**(Plaintiffs individually, and on behalf of the Class)**

206.    Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

207.    Plaintiffs bring this claim on behalf of themselves and Class Members.

208.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

209.    A business act or practice is "unfair" under the UCL if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

210.    Ford has engaged in "unfair" business practices and/or acts by falsely representing the qualities of its express and implied warranties for Class Vehicles; by misrepresenting the workmanship of its Class Vehicles; by failing to disclose the Defect to consumers; and by refusing to provide warranty coverage for the Transmission Defect.

211.    The acts and practices alleged herein are unfair because they caused Plaintiffs and Class Members, and reasonable consumers like them, to believe that Ford was offering something of value that did not, in fact, exist. Ford intended for Plaintiffs and Class Members to rely on its representations. As a result, purchasers and lessees, including Plaintiffs, reasonably perceived that

they were receiving Class Vehicles with certain benefits. This perception induced reasonable purchasers to purchase or lease Class Vehicles which they would not otherwise have done had they known the truth.

212.   The gravity of the harm to Plaintiffs and Class Members resulting from these unfair acts and practices outweighs any conceivable reasons, justifications and/or motives of Ford for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Ford engaged in unfair business practices within the meaning of the UCL.

213.   A business act or practice is also "fraudulent" under the UCL if it is likely to deceive members of the consuming public. Ford engaged in a uniform course of conduct which was intended to, and did in fact, deceive Plaintiffs and Class Members and induced them into buying Class Vehicles. Ford's course of conduct and marketing practices were fraudulent within the meaning of the UCL because they deceived Plaintiffs, and were likely to deceive members of the Class, into believing that they were entitled to a benefit that did not, in fact, exist. Ford's misrepresentations are likely to deceive and have deceived the public.

214.   A business act or practice is also "unlawful" under the UCL if it violates any other law or regulation. Ford has violated the MMWA, the CLRA, and other laws as set forth herein.

215.   Ford has engaged in unfair competition and unfair, unlawful and fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from the Transmission Defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem).

216.   Ford should have disclosed the Transmission Defect and this information because Ford was in a superior position to know the true facts related to the Defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the Defect. Plaintiffs and Class Members relied upon Ford's express representations and promises, as well as omissions, regarding the workmanship of and the warranties for the Class Vehicles, believed them

to be true, and would not have agreed to purchase or lease Class Vehicles had they known the truth about the Defect.

217.    Therefore, the omissions and acts of concealment, fraud, and deceit by Ford pertained to information that was material to Plaintiffs and the Class Members, as it would have been to all reasonable consumers.

218.    Ford had a duty to disclose the Transmission Defect because Ford had exclusive knowledge of the Defect prior to making sales and leases of Class Vehicles and because Ford made partial representations about the quality of Class Vehicles, but failed to fully disclose that the Transmission Defect plagues Class Vehicles.

219.    In failing to disclose that Class Vehicles contain the Defect, the true nature of the quality and workmanship of Class Vehicles, and suppressing other material facts from Plaintiffs and Class Members, Ford breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class Members.

220.    Plaintiffs and Class Members acted reasonably when they relied on Ford's misrepresentations and omissions in purchasing or leasing Class Vehicles—reasonably believing these were true and lawful.

221.    The injuries suffered by Plaintiffs and the Class Members greatly outweigh any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class Members should have reasonably avoided.

222.    Through its fraudulent, unfair, and unlawful acts and practices, Ford has improperly obtained money from Plaintiffs and the Class.

223.     Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Ford relating to the Transmission Defect in Class Vehicles and from violating the UCL in the future by selling Class Vehicles with the Transmission Defect.

224.    Plaintiffs and Class Members also seek to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, require notice of this dangerous condition be given to the Class, and all other relief allowed under Cal. Bus. & Prof. Code § 17200.

## EIGTH CAUSE OF ACTION

### FRAUD/FRAUDULENT CONCEALMENT
**(Plaintiff individually, and on behalf of the Class)**

225.    Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

226.    This claim is brought by Plaintiffs individually and on behalf of Class Members.

227.    Ford concealed and suppressed material facts concerning the performance and quality of the Class Vehicles—namely, the Transmission Defect—and the quality of the Ford brand. Specifically, Ford knew (or should have known of) the Transmission Defect but failed to disclose it prior to or at the time it sold or leased Class Vehicles to consumers. Ford did so to boost sales and leases of Class Vehicles.

228.    Plaintiffs and Class Members had no way of knowing that Ford's representations were false and gravely misleading, or that Ford had omitted imperative details. Plaintiffs and Class Members did not, and could not, unravel Ford's deception on their own.

229.    Ford had a duty to disclose the true performance of Class Vehicles and the Transmission Defect because knowledge thereof and the details related thereto were known and/or accessible only to Ford; Ford had superior knowledge and access to the facts; and knew the facts were not known to, or reasonably discoverable, by Plaintiffs and the Class. Ford also had a duty to disclose because they made many general affirmative representations about the qualities of the Class Vehicles.

230.    On information and belief, Ford still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Defect and the performance and quality of Class Vehicles.

231.    Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or leased the Class Vehicles. The actions of Plaintiffs and Class

Members were justified. Ford was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or Class Members.

232.    Plaintiffs and the Class relied upon Ford's representations and omissions regarding the quality of Class Vehicles and the Defect in deciding to purchase or lease Class Vehicles.

233.    Because of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage because they did not receive the value of the price paid for their Class Vehicles. Plaintiffs and Class Members would have paid less for Class Vehicles had they known about the Transmission Defect, or they would not have purchased or leased Class Vehicles at all.

234.    Accordingly, Ford is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

235.    Ford's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class' rights and well-being, to enrich Ford. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

236.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Ford has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Transmission Defect. Ford has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Ford's misconduct alleged herein, Plaintiffs and Class Members were not receiving trucks of the quality, nature, fitness, or value that had been represented by Ford, and that a reasonable consumer would expect.

237.    Ford has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Ford to retain these profits and benefits, and Ford should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## NINTH CAUSE OF ACTION

### NEGLIGENCE
### (Plaintiff individually, and on behalf of the Class)

238.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

239.    Plaintiffs bring this cause of action individually and on behalf of the Class.

240.    Ford had a duty to design and manufacture a product that would be safe for its intended and foreseeable uses and users, including the use to which its products were put by Plaintiffs and the Class Members. Ford breached its duties to Plaintiffs and the Class Members because they were negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles, and Ford is responsible for this negligence.

241.    Ford was negligent in the design, development, manufacture, and testing of the Transmissions installed in the Class Vehicles because they knew, or in the exercise of reasonable care should have known, that the Vehicles equipped with defective transmissions pose an unreasonable risk of serious bodily injury to Plaintiffs and Class Members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to shifting harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, which can, among other things, distract drivers and cause them to lose control over their vehicles.

242.    Ford owed Plaintiffs and the Class a duty to provide thorough notice of known safety defects, such as the Transmissions' shifting difficulties.

243.    Once it discovered the Transmission Defect, Ford also owed Plaintiffs and Class Members a duty to ensure that an appropriate repair procedure was developed and made available to consumers.

244.    Ford also owed Plaintiffs and the proposed Class a duty not to engage in fraudulent or deceptive conduct, including the knowing concealment of material information such as the Transmission's shifting problems. This duty is independent of any contractual duties Ford may owe or have owed.

245.     Under the TREAD Act, Ford owed an independent duty to send notice to Plaintiffs and Class Vehicle owners, purchasers, and dealers whenever it "learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." 49 U.S.C. § 30118(c). Despite Ford's awareness of the Transmission Defect, it failed to timely notify owners, purchasers, and dealers. This duty is independent of any contractual duties Ford may owe or have owed to Plaintiffs and Class Members.

246.     A finding that Ford owed a duty to Plaintiffs and the Class would not significantly burden Ford. Ford has the means to efficiently notify drivers of Class Vehicles about dangerous defects. The cost borne by Ford for these efforts is insignificant in light of the dangers posed to Plaintiffs and the Class by Ford's failure to disclose the Transmission Defect and to provide an appropriate notice and repair.

247.     Ford's failure to disclose the Transmission Defect in Class Vehicles to consumers and the NHTSA is a departure from the reasonable standard of care. Accordingly, Ford breached its duties to Plaintiffs and the Class.

248.     Ford's conduct was contrary to public policy favoring the disclosure of defects that may affect customer safety; these policies are embodied in the TREAD Act, and the notification requirements in 49 C.F.R. § 573.1, *et seq.*

249.     As a direct, reasonably foreseeable, and proximate result of Ford's failure to exercise reasonable care to inform Plaintiffs and the Class about the Transmission Defect or to provide appropriate repair procedures, Plaintiffs and Class Members suffered damages in that they spent more money than they otherwise would have on Class Vehicles, which are of diminished value.

250.     Plaintiffs and the Class Members could not have prevented the damages caused by Ford's negligence through the exercise of reasonable diligence. Neither Plaintiffs nor Class Members contributed to Ford's failure to provide appropriate notice and repair procedures.

251.    Plaintiffs and the Class seek to recover the damages caused by Ford. Because Ford acted fraudulently and with willful, wanton and reckless misconduct, Plaintiffs also seeks an award of punitive damages.

**TENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**
**(Plaintiff individually, and on behalf of the Class)**

252.    Plaintiffs incorporate by reference and re-allege the preceding paragraphs as if fully set forth herein.

253.    Plaintiffs bring this cause of action individually and on behalf of the Class.

254.    Ford has long known that its 10R80, 10-speed automatic transmissions have a propensity to shift harshly and erratically, causing the vehicle to jerk, lunge, and hesitate between gears, posing a serious safety risk, which it concealed and failed to disclose to Plaintiffs and the proposed Class Members.

255.    As a result of its fraudulent acts and omissions related to the defective Transmissions, Ford obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and the proposed Class Members.

256.    Ford appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Transmission Defect, paid a higher price for their vehicles which actually had lower values.  Ford also received monies for vehicles and transmissions that Plaintiffs and the proposed Class Members would not have otherwise purchased or leased.

257.    It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

258.    Ford's retention of these wrongfully-obtained profits would violate the fundamental principles of justice, equity, and good conscience.

259.    Plaintiffs and the Class are entitled to restitution of the profits unjustly obtained plus interest.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class Members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

B.    Ordering Defendant to pay actual damages (and no less than the statutory minimum damages) and equitable monetary relief to Plaintiffs and the other members of the Class;

C.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the Class;

D.    Ordering Defendant to pay statutory damages, as allowable by the statutes asserted herein, to Plaintiffs and the other members of the Class;

E.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective recall campaign;

F.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

G.    Ordering Defendant to pay both prejudgment and post-judgement interest on any amounts awarded; and

H.    Ordering such other and further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a trial by jury as to all matters so triable.

*Signature on following page*

Dated: January 9, 2020.                    Respectfully submitted,


                                           **GREG COLEMAN LAW PC**

                                           /s/ Alex Straus
                                           Alex Straus (SBN 321366)
                                           alex@gregcolemanlaw.com
                                           **GREG COLEMAN LAW PC**
                                           16748 McCormick Street
                                           Los Angeles, CA 91436
                                           Telephone: (310) 450-9689
                                           Facsimile:  (310) 496-3176

                                           Gregory F. Coleman*
                                           Lisa A. White*
                                           **GREG COLEMAN LAW PC**
                                           First Tennessee Plaza
                                           800 S. Gay Street, Suite 1100
                                           Knoxville, TN 37929
                                           Telephone: (865) 247-0080
                                           Facsimile:  (865) 522-0049
                                           greg@gregcolemanlaw.com
                                           lisa@gregcolemanlaw.com

                                           John R. Fabry*
                                           Luis Munoz*
                                           **THE CARLSON LAW FIRM, P.C.**
                                           1717 N. Interstate Highway 35
                                           Suite 305
                                           Round Rock, Texas 78664
                                           Telephone: (512) 671-7277
                                           Facsimile:  (512) 238-0275
                                           JFabry@carlsonattorneys.com

                                           Sidney F. Robert*
                                           **BRENT COON AND ASSOCIATES**
                                           300 Fannin, Suite 200
                                           Houston, Texas 77002
                                           Telephone: (713) 225-1682
                                           Facsimile:  (713) 225-1785
                                           sidney.robert@bcoonlaw.com

                                           *Attorneys for Plaintiffs*

                                           *Applications pro hac vice to be submitted